Good morning, Your Honors. May it please the Court, Michael Abinetti on behalf of the appellant, Scott Blum, I'd like to reserve five minutes for rebuttal. I don't feel that you have to use the full 20 minutes. This is really not quite as complicated as it may appear. And I don't anticipate using the entirety of the time, Your Honor. I think I'm going to strive to be brief because I think this can be distilled fairly quickly. For the record, the appellant waives the standing argument argued in the papers but does continue to maintain that intervention should not have been granted in that the district court failed to conduct any analysis as to whether intervention was appropriate. The district court in this case clearly abused its discretion in that it failed to follow the clear teachings of this circuit as discussed in Fultz and Beckman and most recently in this circuit's opinion written by, Your Honor, Judge Reinhart in the Perry decision. If you examine the orders at issue in this appeal, there is absolutely no analysis conducted by the district court as to the factors that are required under Fultz, Beckman, and Perry. There was no proper weighing of those various factors, including the relevance of the materials being sought or the reliance by the parties, including but not limited to Mr. Blum, on the terms of the protective order. None of that analysis occurred before the district court modified the protective order and permitted appellee KPMG to intervene in this case. KPMG failed to demonstrate any overlap in facts, parties, and issues. And to be clear, the relevance determination was but a part of the analysis, and even that was not conducted by the district court in this case. That, instead, the district court decided that a state court discovery referee could make that determination. That was in direct conflict with the Fultz decision. Fultz made it a point at page 1132 of that decision to clarify with certainty the mechanics that were to govern a relevance determination. Fultz decided with certainty that that relevance determination was to be left to the court that issued the protective order. And in this case, that was the district court. That was not the state court or the collateral court, and it certainly was not a discovery referee appointed in that case. The district court, by assigning that task to the discovery referee, abrogated its clear responsibility in this case. Mr. Blum did not agree at any point in time that a state court discovery referee could make a determination relating to this protective order, nor did any of the other parties in this case. Moreover, the district court never reached the determination as to whether there was a factor of reliance on this protective order, never discussed it in any of its orders. That was a critical mistake under Fultz, Beckman, and most recently, Perry. And in this instance, reliance was not just on some mere blanket protective order. Reliance was critical, as demonstrated before the district court, because the settlement agreement in this case that was arrived at some seven years prior specifically included the protections of the protective order and noted that those protections were a material inducement for the parties to enter into that settlement agreement. Let me ask just a couple of questions. First of all, did your settlement, was it in the settlement agreement or the protective order where it was agreed by the parties that the documents would be destroyed? Both. It was in both? Yes. And this deposition that is at issue, it was Blum's deposition? Yes, it was the plaintiff's deposition taken, I believe, in 2004. So was there any reason that KPMG could not have retaken the deposition? No reason whatsoever, and we pointed that out to the district court. They were expected to take that deposition. They had every intention of taking the deposition. It's KPMG that speculates, and it's pure speculation and conjecture, that Mr. Blum was going to subsequently purge himself in that deposition, and they wanted this deposition to impeach him. Now, mind you, they make a number of accusations as to what that deposition states, but they claim they never reviewed it, which makes absolutely no sense whatsoever. Either they reviewed the deposition in violation of the protective order, in which case they have a whole set of other problems, or they didn't review it, and it's pure speculation and conjecture as to what it says. In false, the court was clear, this circuit was clear, when it stated, of course, and this is at page 1133, of course, before deciding to modify the protective order, the court that issued it must consider other factors in addition to the relevance of the protected discovery to the collateral litigation. In particular, it must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery. None of that occurred by the district court in this case. And for the district court to modify the protective order, remove the protection in the protective order relating to the deposition transcript some seven years after a settlement was reached. Why wasn't it destroyed? Your Honor. What was the situation? A court reporter kept a copy of it? Allegedly, that's what happened, Your Honor. I don't have an explanation as to why it wasn't destroyed. But I will state this, and I want to put a fine point on this, and it is stated in our papers. In our view, it was entirely inappropriate for an attorney to represent a party in this case, negotiate a settlement where one of the terms of consideration is the destruction of this deposition and the related materials, gain a settlement for that client. Some six or seven years later, begin to represent a new client, KPMG, and take the knowledge and existence of this deposition transcript, contact the court reporter with the hope that the court reporter didn't destroy it, get a copy of it, and then attempt to use it in this case. We believe that raises serious, serious ethical issues. Which counsel was that? I'm sorry? Which counsel are you referring to? That was Mr. Marmoreau of Skadden Arts. And we don't believe that that was appropriate. In fact, Mr. Marmoreau signed the settlement agreement as it related to form and his obligations relating to the treatment of these documents. And so to now have the district court, some seven or eight years later, come in at the request of Mr. Marmoreau's current client, change the terms of the protracted order retroactively is entirely inappropriate. Who's to say that Mr. Blum and the other parties to this case would have ever settled the case had they known that this material term was not going to be upheld, was going to be challenged? What was in the settlement agreement? Were the documents ordered destroyed? Yes. Pursuant to both the protective order, Your Honor, and the settlement agreement, upon the conclusion of the case, the documents were ordered destroyed. And in fact, it is stated in the settlement agreement that that provision was a material inducement to the parties to enter into the settlement agreement. And in fact, in language that I have never seen before, and I have had the privilege of being involved in many cases involving some pretty significant settlement agreements, in language that I have never seen before, not only does it state that that term was a material inducement, but it also states that along the lines that that term is supposed to be given the most robust interpretation under the law. Do we have the settlement agreement in front of us? You do not have the settlement agreement. You have a declaration from me attesting to what the settlement agreement stated because it was confidential. And before the district court, we offered to provide the settlement agreement for in-camera review if the district court so desired. But this is part of our point. The district court never requested to see the settlement agreement because the district court never reached that issue which was required under Foltz-Beckman and Perry, namely, what was the degree of reliance. And, Your Honors, in light of this fact, we believe that it is clear that the district court abused its discretion by not enforcing the terms of the protective order and by allowing KPMG to intervene and allowing KPMG to modify the protective order some seven years later after a settlement agreement had been negotiated in a very significant case without any analysis whatsoever. And for each of those reasons, Your Honors, we believe that the district court's order should be reversed and vacated. Thank you. Thank you. May it please the Court. My name is Rhonda McKay. I'm here on behalf of KPMG Intervenor and Appellee. And I want to start by setting the table a little bit about what this case is really about. This case is about the preservation of relevant evidence. And this case is about KPMG's effort to preserve that evidence pending a determination of whether it could be used in a collateral action. I just want to say a lot of this sounds pretty suspect to me. As you know, I was a litigator in a major law firm for 16 years. And if I had entered into a protective order and a settlement agreement that said we were going to destroy these documents, I would have adhered to that. Your Honor, let me address that specifically because I think there's a misunderstanding here about who retained the transcript and whether or not it was destroyed. Mr. Marmoreau did not obtain a copy of the transcript from his files. But he was acknowledged from his prior representation to go find the court reporter and locate the transcript, didn't he? I don't think that's accurate, Your Honor. How did he know about the transcript then? Because Mr. Blum identified the transcript as a relevant document in a verified discovery response in response to a request for production of documents. He identified this document. He identified his case against Merrill Lynch as a responsive document in his litigation against KPMG. His case against Merrill Lynch? Correct, Your Honor. So to set the table a little bit, Mr. Blum sued Merrill Lynch in 2003-2004. And he alleged that but for the conduct of Merrill Lynch, he would have had an opportunity to sell his stock in the company he owned, Buy.com. I think we understand that he was taking inconsistent, possibly inconsistent positions in the litigation. Correct, Your Honor. And I think that's a separate issue and something that you can litigate  going securitously and violating the terms of a protective order from which a settlement agreement had been reached. I understood, Your Honor. We have never violated the terms of a protective order, ever. What happened, Your Honor, is that the litigation between the parties was quite contentious and there was a lack of trust. I think Reinhart made the point that all litigation is contentious. It was especially contentious in this case, Your Honor. And without going into the details of what that involved, there was simply a lack of trust that documents that were responsive, that existed and that were relevant to litigation would be produced. So what KPMG did was contact a court reporter simply to find out if the transcript existed. That was their only intent and that's all that they did. Now, unfortunately, because of a miscommunication, that court reporter sent the transcript to KPMG's counsel. But at that time that they received the transcript, they did exactly what you would want counsel to do. They sealed it. They sequestered it. They have never reviewed it. They immediately notified the discovery referee and the state action, and they immediately notified Mr. Blum's counsel to try and tee up a hearing to find out what should happen next. So the protective order has never been violated by KPMG. Mr. Marmoreau did not obtain a copy of the transcript from his former client, Mr. Mazzucco. He did not obtain a copy of that transcript from his own files. KPMG's counsel determined that it was important to determine whether or not a copy of this transcript existed. It had been being withheld by Mr. Blum in the state action, and so there was an effort made to determine if its existence was still something that we could subpoena. And that's the only reason that contact was made to the court reporter. I can't stress enough, Your Honor, that no request was made that the transcript be sent. In fact, the transcript was sent because we knew it was subject to a confidentiality order. We took the steps that I described earlier. Did you know it was subject to an order to destroy? No, Your Honor. And Mr. Marmoreau knew that, I guess. I don't know if Mr. Marmoreau knew that. He must have known it if he signed the agreement. I'm sure he's a very careful lawyer and would not have signed the agreement with that clause in there without knowing it. I'm certain that he knew it at the time, Your Honor. I don't know if you recall that at the time that we received the transcript, but I do want to point out that the destruction provisions that you're talking about are not absolute. We don't have the settlement agreement before us because it's never been produced. I'd like to see the settlement agreement. I think Judge Zellner should look at the settlement agreement. All we have is the protective order. We have the protective order. We have Mr. Blunt's current counsel's interpretation of the settlement agreement. But, Your Honor, we also have some acknowledgments that were put into the record that make clear that wholesale destruction of documents after the fact was not required by the settlement agreement.  And there was also some exception in the settlement agreement that materials could be redacted in lieu of being destroyed. And that is in the acknowledgments that were submitted by Mr. Blunt. Perhaps, Your Honor, perhaps if there is a provision in the settlement agreement that provides that certain materials can be redacted in lieu of being destroyed, then the transcript could fall within that. Perhaps if ---- What paragraph is that? Your Honor, that is Excerpt of Record 37. What paragraph is the protective order? Oh, I'm sorry. I'm talking about the settlement agreement. So we don't have the settlement agreement? We don't. But even the protective order, Your Honor, makes clear that it was subject to the court's continuing jurisdiction and that it was subject to later modification by the court. Your Honor, I also think it's important to point out here that while Mr. Blunt says now that he has an expectation that the documents would be produced, it is not clear that Mr. Blunt adhered to that destruction provision. Again, he identified his own transcript in response to a request for the production of documents in a verified response. He identified that transcript as responsive and relevant to the litigation with KPMG. How do you identify a document in response to a request for production if that document doesn't exist? So for Mr. Blunt to say now that he relied so heavily on this destruction provision is certainly belied by the record. The court retained continuing jurisdiction over that protective order. It was subject to modification at the court's substantial latitude, as Mr. Blunt has already recognized. Your Honor, just to address your question as to why KPMG can't simply just take Mr. Blunt's deposition now, if I may, there's a couple reasons for that. Number one, the posture of the case that he was litigating at the time he gave that deposition is important. As you noted, there seems to be an inconsistency here. He claimed that Merrill Lynch caused him hundreds of millions of dollars of damages because he couldn't sell his entire Buy.com stock. He later claimed that KPMG caused him hundreds of millions of dollars in damages because he couldn't sell that exact same Buy.com stock a year earlier. And so if you look at the fact that he's sitting for a deposition at a time when he wants to support his allegations against Merrill Lynch and what he would say in that setting, it's going to be different than what he's going to say in a setting today against KPMG. And I'm not trying to cast aspersions on his truthfulness. Maybe he'll say exactly what he remembers, and he'll say what the truth is for him today. But there's no substitute for what he said back in a deposition in 2004 when he was seeking to recover hundreds of millions of dollars against Merrill Lynch based on the same theory he later advocated against KPMG. And under the Beckman case, Your Honor, and you should be – for you to prove that up. That it would be very easy to prove that he's taken a – Without the prior transcript. Your Honor, I think that we could explore – Was everything from that prior lawsuit – I mean, surely some of it was public record. Your Honor, it was arbitrated. So that's the other piece of the puzzle here. The prior case was brought before Judge Selna, but the bulk of the litigation took place in arbitration, which was private. So we don't have a lot of public documents here. We have an unverified complaint, and we know that this transcript exists that contains relevant information. And we know it's not just speculation that it's relevant, because Judge Selna took the extraordinary step of sending it to a state court discovery referee and getting an actual relevance determination. And Justice Neal reviewed every page of that transcript. He was in the best position to do so because he was familiar with the state court action, and he had the contents of the transcript, and reviewed those two – reviewed the transcript, compared it to what was going on in the state action, and within one day, Your Honor, issued an order saying this is relevant. Let me know if you'd like sites to pages where it's relevant. What's the current status of the Federal case? Your Honor, the current status of the Federal case is that it is state, pending the resolution of one of Mr. Blum's related tax court cases. So – but you've been granted judgment as a matter of law as to one of the claims? Correct, Your Honor. But the rest of the cases going on but state? Yes, Your Honor. And to give you a little bit of background on that, we were granted judgment as a matter of law based on a tax court ruling related to the OPA's tax strategy, and that court found that Mr. Blum had not relied on KPMG in good faith. We used that determination or that ruling to get judgment on the pleadings before the district court, but Mr. Blum is now appealing the tax court's ruling, and we estimate that he will likewise appeal our current judgment on the claims that we were able to secure judgment on. Well, I won't ask whether this case should be sent to mediation. Sadly, I don't think that would get us very far. Your Honor, if I may, I would also like to address Mr. Avenatti's statements about what the Foltz case requires. Mr. Avenatti claims that Foltz requires that the court overseeing the protective order is the only court that can make the determination about relevance. Now, I submit to you that Judge Selma did make an initial determination of rough relevance, but I don't think any reading of Foltz supports what Mr. Avenatti says. I think that the Foltz court made clear that it would be an ideal situation for the court in the collateral action to make the relevance determination, and the Foltz court conceded that the court in the collateral action will ultimately make the determination of discoverability. But I think in terms of efficiency, the Foltz court deemed that it was sufficient that the court overseeing the protective order make a rough estimate of the relevance, and then the ultimate determination of discoverability can go to the collateral court. I also take issue with Mr. Avenatti's claim that the court here did not address his reliance. I think it's critical to point out that Mr. Blum, despite multiple opportunities, has never identified one confidential thing about the transcript, has never claimed it contains trade secrets, medical information, financial information, has never identified a harm that will result if the transcript is disclosed. Nonetheless, Judge Selma in his order said, I will grant disclosure of this transcript, but I will give you appropriate time to seek entry of an appropriate protective order to address any confidentiality concerns you may have. But the reality of this situation is this transcript isn't confidential. It was designated confidential because at the time it was a blanket protective order, and no one really cared about it. And Mr. Blum is now seeking to use that blanket designation to withhold a judicial admission and statements against his interest because they undermine his claims against KPMG. Ginsburg. I think it's Justice Neal. Did he make a finding as to whether the transcript contained any confidential material? He did not, Your Honor. I'm just bothered by one thing that goes by. Whose duty was it to see that this transcript was destroyed under the protective order of the settlement agreement? Your Honor, that's a fair question. All my questions are fair questions. I submit to you, Your Honor, that if destruction of these materials was important to Mr. Blum, that at the conclusion of the litigation, number one, Mr. Blum would have destroyed his own materials in his possession. But number two, he would have reached out to the court reporter to ensure that destruction happened, that those materials were likewise destroyed. I don't see anything in the materials that have been submitted that suggests that the burden was on anyone else to reach out to third parties and ensure that they destroyed their copies of the transcript. And I think in this case, people just weren't thinking about the fact that court reporters retain copies of transcripts. But I don't think it's... Mr. Marmero thought of it. Mr. — I don't know that that was necessarily Mr. Marmero's idea. KPMG's counsel, as a team, decided we need to determine whether or not this transcript even exists. Because we have been in litigation with Mr. Blum where we spend months on a motion to compel, trying to get documents over which there is a claim of confidentiality and attorney-client privilege, only to find once those claims have been overruled and the matter, the motion to compel is successful, that there's no underlying documents. And that's what led to our taking the step of trying to see if a copy of the transcript even existed. Is this a fight that we need to have? I find this so incredulous. I feel like I'm back in district court days hearing a discovery dispute. This is really something. Okay. Your Honor, lastly, I just want to point out, I understand that Mr. Blum has waived his argument as to the standing, but still disputes intervention and says the court did not consider that. The court did consider that. And there is footnote one in the court's April 5th order addresses the fact that the court has fully considered all of Mr. Blum's arguments against intervention, but found that the grant of intervention was proper pursuant to Beckman. And the other thing I'd like to point out, Your Honor, is that there's 40 years of precedent for the fact that litigants can permissively intervene in other actions and seek modifications of protective orders in order to obtain relevant evidence. Maybe this transcript should have been destroyed, but it wasn't. It exists. And now that we know that and we know that it's relevant evidence, the only issue is, can we use it in the collateral action? KPMG will live by the court's rule either way. We just wanted the opportunity to be able to have this determination. We were trying to preserve evidence so we could make a determination and put it Mr. Blum, on the other hand, sought to destroy the transcript before that determination could be made. And with that, Your Honor, unless there are any further questions. Thank you. What I find incredulous is the admission that was just made on the record, which is that the group of lawyers representing KPMG that included Mr. Marmaro, who was lead counsel, decided to undertake an effort to locate a transcript that they knew they had no right to and that they knew should have been destroyed some seven years prior. That's what I find to be incredulous. I also find it incredulous that when they obtained the fruits of their efforts, they didn't destroy it. They didn't send it back. They kept it. And they then teed it up for the state court discovery referee because they wanted to effectively launder it and use it. And that's exactly what happened. And that is after Mr. Marmaro negotiated a settlement agreement for another client with a term in the settlement agreement that specifically said that confidential materials and the deposition transcripts were to be destroyed. And for the record, we have no objection to the record being supplemented here today with a copy of the settlement agreement for this court to review. This was a very serious issue, and it was not handled appropriately by any stretch. Now, counsel mentioned that this deposition transcript had been disclosed in discovery. Mr. Blum was inquired as to whether he had been deposed before. That's not an unusual question in a piece of litigation. And whether there had been any deposition transcripts created from those depositions. Mr. Blum identified yes, he had been deposed before, and he identified this transcript. That was his obligation in being truthful in response to that discovery. He never mentioned the name of the court reporter. We didn't even know the name of the court reporter. The appellant had no record of this deposition transcript because Mr. Blum had met his obligations under the protective order in the settlement agreement and destroyed the transcript, along with a host of other documents. The appellant, the record shows, had to get the transcript actually from KPMG ultimately so that we could review it, because we didn't have access to it, because we understood that it had been destroyed. Wait a minute. Who got the transcript from KPMG? The appellant. We ultimately had to get it during the course of this dispute from KPMG. Now, whose obligation was it that there was an agreement that everyone would destroy copies? And I assume that applies to everyone in the world. That's correct. It was the ---- And whose obligation was it to see that the court reporter or nobody's? Your Honor, it wasn't specified. The settlement agreement provided that all confidential materials, including these deposition transcripts. And we're not just talking about Mr. Blum's deposition transcript. There was an agreement among the parties. It was negotiated that all the deposition transcripts ---- Well, what good does it do to have an agreement that everything will be destroyed? You know, whoever in the world happens to have a copy, if nobody tells that person, you are bound by this agreement the court has made, and you've got to do something. Did anybody tell that to the court reporter? Your Honor, I'm not certain of that. I believe that it was understood among the parties. Most court reporters don't keep deposition transcripts. So this was a deposition taken by Mr. Marmoreau of Mr. Blum? He was one of the questioning parties, I believe, yes, or attorneys. Okay. So who hired the court reporter? I believe it was Mr. Marmoreau or one of the other defendants in the case. Because that's typically not ---- that was my experience, too. The person who noticed the deposition would be the one who would hire the court reporter, so the court reporter would be his agent. Mr. Marmoreau and Skadden Arps either knew exactly who the court reporter was and called her in an effort ---- No, no, that's going beyond the period of time we're talking about. After the settlement agreement, the court reporter wouldn't know to destroy the transcript unless someone told the court reporter. And, Your Honor, I would agree with that, but our point is as follows. Whether the court reporter destroyed the transcript or not is of no moment. The issue is whether a lawyer that was involved in the prior case and signed the settlement agreement and knew that the transcript, wherever it came from, should not exist and should be kept confidential or namely should have been destroyed, can then undertake an effort to surreptitiously obtain the transcript through an alternative means. And that's exactly what happened here. And that's not appropriate under any stretch. Well, if we put it a different way, suppose that Mr. Blum, for some reason, wanted to get the transcript at this point, and he said, well, you know, maybe I ought to just check around and see if anybody has a copy of the transcript, if it wasn't destroyed, and then ask the court, look, there is a copy, and I want to make a motion that this doesn't have to be destroyed. There wouldn't be anything wrong with that, would there? No. I think there most certainly would be, Your Honor, because there was an agreement that was in place that disposed of this case that specifically provided for the destruction of that document. But if Mr. Blum decided that this might be somewhat useful to him, and he came back to the court and said, listen, I just found out there is a copy of this. I want to ask the court to modify its prior order. And the court might just say, no, look, this should have all been destroyed. I'm not going to change it. But there wouldn't be anything wrong, would there, with Mr. Blum doing that? I'm assuming he didn't hire a reporter. But he just said, maybe I ought to check with the reporter who took this. Well, Your Honor, I don't think so. It's not necessarily as evil as you make it seem. Well, Your Honor, this isn't – this was not just by happenstance that KPMG and Mr. Marmoreau found out that this transcript still existed. They undertook an effort to try to locate it. And lo and behold, as Judge Wardlaw mentioned, Mr. Marmoreau thought of it, or at least they thought of it. Hey, we can call the court reporter. Maybe she still has the transcript that should have been destroyed seven years ago. We don't believe that that conduct is appropriate. If I had a client that asked me whether we should do that, my response would be no, because among other reasons, even if we get it, we shouldn't have it and we can't use it. So I would like to see a copy of the settlement agreement. I assume it was filed with the court, right? No, it was available for in-camera review. The court did not request a copy. Appellants have absolutely no objection to the settlement agreement being included in the record. Well, who has it? I believe counsel has a copy of it. If not, we'd be happy to submit it within the next two business days to the court. All right. Well, why don't you wait a second. We'll see what your opponent's position is on that. Dee? Your Honor, just to briefly respond, I don't think we object to the submission of the settlement agreement, but I do want to make clear that Mr. Marmoreau was at a firm, Proskauer Rose. He represented one of the individual defendants in Mr. Braun's claims. He wasn't the legal lawyer. I didn't think he was at Skadden Arps. Pardon? I didn't think he was at Skadden Arps at that point. Right. But the reason he don't have a copy of the settlement agreement and he doesn't have the records, for example, the protective order and the settlement agreement at his fingertips at the time that this was happening is because those are files of Proskauer Rose, not Skadden. Mr. Marmoreau did not take those files with him when he came to Skadden. And so I just wanted to make that clear, and also that he was not the lead attorney for the defense in that case. I do not believe, although I don't know, but I do not believe Mr. Marmoreau would have noticed Mr. Braun's deposition. He was representing one of the individual defendants in that case, not Merrill Lynch. Okay. Thank you very much. Thank you, Your Honor. Just a point of clarification, then. There's no objection by the appellees or appellee as to the submission of the settlement agreement to this Court's approval? Am I correct about that? Yes. Okay. Okay. So the appellant will submit a copy of the settlement agreement, supplement the record within... We'll send it to your opponent first, I think. Without a doubt, Your Honor, we will do that, and I thank the Court for its time. Thank you. Your Honor, there are other parties to the settlement agreement. It's not just Mr. Mazzucco, who we no longer represent. So I don't know that... KPMG has no stake in this. The settlement agreement has nothing to do with us. It's not ours. We don't object to being followed with the record, but I just want to point out that there are other parties to that settlement agreement. If it's confidential, I don't know that it's appropriate here. We'll send an order about the submission of the settlement agreement one way or the other. Yeah. Thank you. Thank you, Your Honor. Thank you all very much. The calendar, please, get it under submission.
judges: Bell, Reinhardt, Wardlaw